**UNITED STATES of America,
Plaintiff,**

v.

**Paul R. BROWN et al.,
Defendants.**

**No. 71 Civ. 3294 (HFW).**

United States District Court,
S. D. New York.

Oct. 6, 1975.

Paul J. Curran, U. S. Atty., New York City, for plaintiff; V. Pamela Davis, Asst. U. S. Atty., of counsel.

Liggio & Pitaro, New York City, Nicholas L. Pitaro, New York City, of counsel; Paul P. Rao, Jr., New York City, for defendants Paul R. Brown and United States Telephone Co.

## MEMORANDUM DECISION

WERKER, District Judge.

The United States of America (the Government) brought this action under 19 U.S.C. § 1592 to recover penalties for the introduction into the commerce of the United States by Paul R. Brown (Brown) and United States Telephone Company of imported merchandise under false and fraudulent invoices.[1]

The defendants were previously convicted of a violation of Title 18, United States Code with respect to 36 entries of the 122 entries allegedly fraudulently made in the Fourth Cause of Action. Summary judgment with respect to 32 of those entries was granted by this court on July 11, 1975. It was denied as to four entries because an issue of fact with respect to the statute of limitations was raised by the individual defendant, Brown. The question of the amount of the penalty with respect to those 32 entries was thereafter reserved for the trial with respect to the entries listed in the Summary of Value annexed hereto as Appendix A (Plaintiff's Exhibit 75).

Eighteen entries listed in Appendix A were not the subject of the criminal trial. With respect to these entries the trial was had with respect to liability as well as the amount of the penalty to be assessed.

It was stipulated that the defendant Paul R. Brown on behalf of defendant United States Telephone Company caused decorator telephones to be entered into commerce by means of invoices covered in the Government's Exhibits 1–50. It was further stipulated that Government's Exhibits 1A–50A were genuine and authentic and were prepared for the account of United States Telephone Co. The court finds that Exhibits

---

1. Title 19, United States Code, Section 1592 provides:

"If any consignor, seller, owner, importer, consignee, agent, or other person or persons enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance whatsoever, or makes any false statement in any declaration under the provisions of section 1485 of this title (relating to declaration on entry) without reasonable cause to believe the truth of such statement, or aids or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the

United States shall or may be deprived of the lawful duties, or any portion thereof, accruing upon the merchandise, or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement; or is guilty of any willful act or omission by means whereof the United States is or may be deprived of the lawful duties or any portion thereof accruing upon the mechandise or any portion thereof, embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission, such merchandise, or the value thereof, to be recovered from such person or persons, shall be subject to forfeiture, which forfeiture shall only apply to the whole of the merchandise or the value thereof in the case or package containing the particular article or articles of merchandise to which such fraud or false paper or statement relates."

1–50 and 1A–50A are duplicates in all respects excepting for the unit price of the telephones. It further finds that 1A–50A were never submitted to Customs but were used for purposes of obtaining letters of credit with respect to the merchandise covered by the invoices. The genuineness of the letters of credit and the debit slips on the letters showing that they were actually paid were also stipulated. These were both for the account of the defendant United States Telephone Company. The values stated in the invoices used for letter of credit purposes were in the main considerably higher than those in the invoices filed with Customs.

The special Customs invoices, Government's Exhibits 39C, 40C, 45C, were stipulated as being authentic and genuine and submitted to the banks to obtain payment on the letters of credit by Paul R. Brown and the United States Telephone Company. These exhibits are identical to the special Customs invoices filed with Customs, Government's Exhibits 39B, 40B and 45B, with the exception of the unit prices. The price lists of the United States Telephone Company dated April 21, 1967, August 1, 1966, March 1, 1966 and United States Telephone Company Plug-in, Ready-to-go Designer Telephones Price List 1972 and United States Telephone Company Housing Price List 1972 are also agreed as authentic and genuine.

The defendant Brown has attempted to explain the differential in price between the invoices upon which the telephones were entered and those submitted to the banks on the basis of engineering charges, tools and dies made up and discarded and other miscellaneous charges.

The statute [2] requires that the invoices have endorsed upon them a statement containing *inter alia* "that there is no other invoice differing from the invoice so produced, and that all the statements contained in such invoice and in such declaration are true and correct." Mr. Brown's testimony in the light of the fact that the second set of invoices were never disclosed becomes immaterial excepting with respect to valuation. The defendants are by their own admissions in violation of this section of the statute.

Aside from the above, the Seller in each invoice is listed as Greenhill Kato & Co., Ltd. This company acted as defendants' purchasing agent and was paid a commission for its services. Certainly Brown knew who the manufacturer seller was but apparently did not choose to have that revealed.

Although we are not in this proceeding concerned with value from the viewpoint of duties that may be due we must determine whether the entries were fraudulent or false without reasonable course to believe the truth of the statement and whether the defendants are guilty of any wilful act or omission.

The defendant Brown is a seasoned businessman fully familiar with foreign commerce and the importation of goods. The only explanation which he has given for differences in value is that set forth above. No explanation is given for the failure to file these invoices nor is there any satisfactory explanation as to why the additional charges could not have been handled by an additional letter of credit. The court is thus left to the conclusion that if there were additional charges they were attributable to the actual cost of the merchandise and should have been reported on the invoices used for entering the goods. This view is further reinforced by the fact that aside from providing the wholesale price lists the defendant Brown although requested to do so furnished the Customs with no additional information or documentation with respect to the entries. As a result of this recalcitrance it became necessary in October 1965 to refer this matter for inquiry to the office of the Treasury in Japan. The report of that investigation was received in New York on October 24, 1966. During the period of

2. Title 19, United States Code, Section 1482 (b).

1964 to 1971 there were approximately 2000 import transactions per day involving Customs entries in the Port of New York and approximately 80 import specialists to handle this traffic. There was no evidence of fraud received by Customs during the period October 1965 and October 24, 1966 nor any received prior to July 21, 1966. The complaint here was filed on July 21, 1971. The statute of limitations with respect to a claim under 19 U.S.C. § 1592 is "five years after the time when the alleged offense was discovered" (19 U.S.C. § 1621). The defendants have failed to sustain the defense of the statute of limitations.

■ Under the circumstances set forth above the court is persuaded that the plaintiff has sustained its burden of proof and has shown by a fair preponderance of the evidence that the defendants have violated sections 1482(b) and 1592 of Title 19. It is inconceivable that Mr. Brown acting on behalf of the United States Telephone Company did not know that the two sets of invoices were prepared; that one set with lower value would be used for importation and the other to obtain the letters of credit; that this was done for the purpose of lowering the value of the entries and falsely stating the unit prices of the telephones and was done wilfully and intentionally. There was furthermore no reasonable cause to believe the truth of the invoices used to enter the goods.

■ The evaluation of the merchandise was undertaken by Mr. Harry Haroian a Supervisory Import Specialist who has been an Import Specialist in electrical and electronic components including telephones since 1968. He sufficiently identified Government's Exhibits 1–50 and 1B–49B the special invoices. The court finds him qualified by experience and training to value the merchandise which is the subject of this action. He evaluated the merchandise at domestic value, i. e., the price at which it was freely offered and sold in the usual quantities in the market in the United States. He based his appraisal on the wholesale price lists submitted by Paul Brown, Government's Exhibits 51 through 55, and in instances where those price lists were not available he utilized the prices in the invoices used for letter of credit purposes as representing domestic values. This appraisal was made in October 1970.

■ Mr. Brown's testimony as to domestic value was concerned with sales for which no documentation of any kind was furnished. His explanation as to discounts for quantity sales seemed reasonable but again there was no documentation with respect to the merchandise which was the subject of this action. He also indicated that the price lists used by Mr. Haroian were merely bargaining points not the prices at which the items were sold. For the reasons stated, i. e., lack of corroboration, this testimony is discounted. The court accepts and finds that the usual markup on the units was 1.2% to 1.5% and that a gross profit of 37½% was required by defendants. Thus a telephone costing $21 out of Japan would have to sell for $45 in the wholesale market.

The Government's claim based upon the valuation made by Mr. Haroian is $1,522,454.50 (Appendix A) when applying Mr. Brown's "rule of thumb" markup of 1.2% the value of $1,438,379.-22. A markup of 1.5% would exceed the amount of the Government's claim.

Based upon these computations the court finds that the evaluation made by Mr. Haroian is a fair and reasonable appraisal of the domestic value.

■ The Government is granted judgment against Paul R. Brown and the United States Telephone Company in the amount of $1,522,454.50.

Defendants' affirmative defenses are dismissed for the reasons stated in my memorandum of July 11, 1975.

So ordered.

See Appendix A on next page.

## APPENDIX A

### SUMMARY OF VALUE OF IMPORTED MERCHANDISE TAKEN FROM PLAINTIFF'S CHARTS INTRODUCED AT TRIAL

| Govt. Ex. # | Entry No. | Model # | No. of Units | U.S. Whole-sale Price | Total Domestic Value |
|---|---|---|---|---|---|
| 1 | 836373 | Majesty | 25 | $125.00 | $ 11,967.50 |
| | | Napolean I | 47 | 87.50 | |
| | | Napoleon II | 6 | 100.00 | |
| | | Cleopatra | 40 | 87.50 | |
| | | Mandarin | 7 | 90.00 | |
| 2 | 82400 | JO8 | 99 | $ 35.50 | $ 12,477.00 |
| | | Cleopatra I | 35 | 87.50 | |
| | | Cleopatra II | 59 | 100.00 | |
| 3 | 82343 | Majesty Gold | 30 | $125.00 | $ 15,750.00 |
| | | Majesty Silver | 89 | 125.00 | |
| | | Majesty Antique | 7 | 125.00 | |
| 4 | 1058923 | Duchess | 500 | $ 37.50 | $ 18,750.00 |
| 5 | 724394 | Matoi | 72 | $ 79.95 | $ 5,756.40 |
| 6 | 4193 | Ivory | 460 | $ 35.50 | $ 68,444.00 |
| | | Black | 266 | 35.50 | |
| | | Ivory | 698 | 35.50 | |
| | | Ivory | 504 | 35.50 | |
| 7 | 842463 | Colonial | 148 | $ 79.95 | $ 16,482.60 |
| | | Antimony | 24 | 37.50 | |
| | | Duchess | 100 | 37.50 | |
| 8 | 15601 | Matoi | 48 | $ 79.95 | $ 4,681.60 |
| | | Continental | 22 | 35.50 | |
| 9 | 17510 | Continental Ivory | 550 | $ 35.50 | $ 38,075.00 |
| | | Continental Black | 100 | 35.50 | |
| | | Continental Gold | 200 | 37.50 | |
| | | Duchess | 200 | 37.50 | |
| 10 | 951642 | Majestic Antique | 20 | $125.00 | $ 3,250.00 |
| | | Majesty Gold | 6 | 125.00 | |
| 11 | 20323 | Antimony | 100 | $ 37.50 | $ 66,729.00 |
| | | Duchess | 498 | 37.50 | |
| | | Continental Ivory | 802 | 35.50 | |
| | | Continental Black | 198 | 35.50 | |
| | | Continental Gold | 248 | 35.50 | |

APPENDIX A—Continued

| Govt. Ex. # | Entry No. | Model # | No. of Units | U.S. Whole-sale Price | Total Domestic Value |
|---|---|---|---|---|---|
| 12 | 22588 | Continental Ivory | 348 | $ 35.50 | $ 90,554.00 |
|  |  | Continental Black | 200 | 35.50 |  |
|  |  | Continental Gold | 402 | 37.50 |  |
|  |  | Duchess | 500 | 37.50 |  |
| 13 | 23294 | Majesty Antique | 67 | $125.00 | $ 12,250.00 |
|  |  | Majesty Gold | 31 | 125.00 |  |
| 14 | 23295 | Continental Ivory | 582 | $ 35.50 | $ 37,001.00 |
|  |  | Continental Black | 80 | 35.50 |  |
|  |  | Continental Gold | 160 | 37.50 |  |
|  |  | Duchess | 700 | 37.50 |  |
| 15 | 25910 | Continental Ivory | 1122 | $ 35.50 | $ 84,538.50 |
|  |  | Continental Black | 165 | 35.50 |  |
|  |  | Continental Gold | 328 | 37.50 |  |
|  |  | Duchess | 408 | 37.50 |  |
|  |  | Antimony | 300 | 37.50 |  |
| 16 | 936732 | Duchess | 250 | $ 37.50 | $ 52,625.00 |
|  |  | J8–4 Gold | 250 | 37.50 |  |
|  |  | J8–4 Ivory | 500 | 35.50 |  |
|  |  | J8–4 Black | 250 | 35.50 |  |
|  |  | Classique Antimony | 100 | 60.00 |  |
|  |  | Majesty Silver | 15 | 125.00 |  |
|  |  | Majesty Antique | 15 | 125.00 |  |
| 17 | 959402 | Matoi | 42 | $ 79.95 | $ 3,357.90 |
| 18 | 998095 | Seville | 702 | $ 35.50 | $ 41,121.00 |
|  |  | JO8 Gold | 234 | 37.50 |  |
|  |  | Duchess | 198 | 37.50 |  |
| 19 | 1003892 | JO8 Ivory | 300 | $ 35.50 | $ 10,650.00 |
| 20 | 66302 | JO8 Ivory | 500 | $ 35.50 | $ 46,050.00 |
|  |  | JO8 Black | 100 | 35.50 |  |
|  |  | Classique | 100 | 60.00 |  |
|  |  | JO8 Gold | 200 | 37.50 |  |
|  |  | Duchess | 200 | 37.50 |  |
|  |  | Gold L'antique | 100 | 37.50 |  |
| 21 | 853402 | Majesty Gold | 20 | $125.00 | $ 5,000.00 |
|  |  | Majesty Antique | 20 | 125.00 |  |
| 22 | 856096 | Majesty Gold | 22 | $125.00 | $ 6,375.00 |
|  |  | Majesty Antique | 28 | 125.00 |  |
|  |  | Majesty Silver | 1 | 125.00 |  |
| 23 | 981376 | Antimony | 72 | $ 60.00 | $ 31,112.00 |
|  |  | Gold | 102 | 37.50 |  |
|  |  | Duchess | 306 | 37.50 |  |
|  |  | Seville | 204 | 35.50 |  |
|  |  | Majesty Gold | 34 | 125.00 |  |

## APPENDIX A—Continued

| Govt. Ex. # | Entry No. | Model # | No. of Units | U.S. Whole-sale Price | Total Domestic Value |
|---|---|---|---|---|---|
| 24 | 1054480 | Contessa | 1500 | $ 24.00 | $ 36,000.00 |
| 25 | 1094282 | JO8 Ivory | 500 | $ 35.50 | $ 39,450.00 |
| | | JO8 Black | 100 | 35.50 | |
| | | JO8 Gold | 200 | 37.50 | |
| | | Seville | 300 | 35.50 | |
| 26 | 1108107 | Duchess | 150 | $ 37.50 | $ 20,875.00 |
| | | Classique | 150 | 60.00 | |
| | | Majesty Antique | 50 | 125.00 | |
| 27 | 750143 | Contessa Gold | 500 | $ 32.50 | $ 22,500.00 |
| | | Majesty Gold | 50 | 125.00 | |
| 28 | 730390 | Duchess | 300 | $ 37.50 | $ 17,500.00 |
| | | Majesty Gold | 50 | 125.00 | |
| 29 | 747262 | Classique | 194 | $ 60.00 | $ 11,640.00 |
| 30 | 765410 | Contessa White | 3200 | $ 24.00 | $105,050.00 |
| | | Contessa Beige | 500 | 24.00 | |
| | | Contessa Gold | 500 | 32.50 | |
| 31 | 765411 | Electra Gold | 200 | $ 21.00 | $ 15,070.00 |
| | | Electra Ivory | 220 | 21.00 | |
| | | Majesty Gold | 50 | 125.00 | |
| 32 | 782341 | Electra Ivory | 846 | $ 21.00 | $ 22,302.00 |
| | | Electra Gold | 216 | 21.00 | |

Total 1–32 = $1,356,964.50

| Govt. Ex. # | Entry No. | Model # | No. of Units | U.S. Whole-sale Price | Total Domestic Value |
|---|---|---|---|---|---|
| 33 | 863429 | US–4 White | 1008 | $9.00 | $ 9,072.00 |
| 34 | 896704 | US–4 Gold | 516 | $9.00 | $ 4,644.00 |
| 35 | 891803 | US–4 Gold | 336 | $9.00 | $ 3,024.00 |
| 36 | 915078 | US–4 White | 360 | $9.00 | $ 6,318.00 |
| | | US–4 Gold | 342 | 9.00 | |
| 37 | 925394 | US–4 Gold | 204 | $9.00 | $ 2,322.00 |
| | | US–4 White | 54 | 9.00 | |
| 38 | 965497 | US–4 White | 1998 | $8.00 | $ 15,984.00 |
| 39 | 1081594 | US–4 White | 996 | $8.00 | $ 7,968.00 |
| 40 | 1057769 | US–4 White | 504 | $8.00 | $ 4,032.00 |

APPENDIX A—Continued

| Govt. Ex. # | Entry No. | Model # | No. of Units | U.S. Whole-sale Price | Total Domestic Value |
|---|---|---|---|---|---|
| 41 | 965496 | US–4 White | 366 | $8.00 | $ 3,360.00 |
|  |  | US–4 Gold | 54 | 8.00 |  |
| 42 | 1003583 | US–4 White | 198 | $8.00 | $ 3,192.00 |
|  |  | US–4 Gold | 201 | 8.00 |  |
| 43 | 996022 | US–4 White | 201 | $12,006.00 | $ 12,006.00 |
|  |  | US–4 Gold | 495 |  |  |
|  |  | Classique Antimony | 702 |  |  |
| 44 | 1008523 | US–4 White | 1884 | $8.00 | $ 15,072.00 |
| 45 | 1010253 | US–4 White | 996 | $8.00 | $ 9,264.00 |
|  |  | US–4 Gold | 162 | 8.00 |  |
| 46 | 1008529 | US–4 Gold | 1008 | $8.00 | $ 8,064.00 |
| 47 | 1008530 | US–4 White | 996 | $8.00 | $ 7,968.00 |
| 48 | 58326 | US–4 White | 1704 | $9.00 | $ 27,054.00 |
|  |  | US–4 Gold | 1302 | 9.00 |  |
| 49 | 62744 | US–4 White | 996 | $9.00 | $ 17,928.00 |
|  |  | US–4 Gold | 996 | 9.00 |  |
| 50 | 58108 | US–4 White | 2304 | $9.00 | $ 25,272.00 |
|  |  | US–4 Gold | 504 | 9.00 |  |

Total US–4 = $165,490.00