**UNITED STATES of America, Plaintiff,**

v.

**THORSON CHEMICAL CORPORATION, Defendant.**

**Court No. 88–11–00853.**

United States Court of International Trade.

May 28, 1992.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Jane E. Meehan, Amy Schwartz, Office of Regional Counsel, U.S. Customs Service, Washington, D.C., of counsel, for plaintiff.

Irving A. Mandel and Thomas J. Kovarcik, Jeffrey H. Pfeffer, New York City, of counsel, for defendant.

## OPINION AND ORDER

CARMAN, Judge:

The Plaintiff United States government seeks to recover a civil penalty assessed against Defendant Thorson Chemical Corporation ("Thorson") in the amount of $150,000.00, plus interest, for allegedly declaring false entered values for the imported merchandise by means of fraud in violation of section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1988).[1] Defendant denies it committed any violation of section 1592 and counterclaims for restitution from the government in the amount of $7,356.12, the sum tendered for lost duties from the alleged violations. The Court has jurisdiction over the action pursuant to 28 U.S.C. § 1582 (1988).

### Facts

Defendant Thorson (also referred to as "Thorson U.S.") is a corporation which was organized under the laws of New York State in February 1968 and was formed for the purpose of importing chemicals. Between October 22, 1980 and June 10, 1982, Thorson entered eleven shipments of chemical products from Europe into the commerce of the United States under the cover of the following consumption entries:

| Entry Number | Approximate Date of Entry |
|---|---|
| 81–1001–167160 | October 22, 1980 |
| 81–1001–167954 | January 1, 1981 |
| 81–1001–168735 | March 16, 1981 |
| 81–1001–790426 | July 10, 1981 |
| 81–1001–790427 | July 9, 1981 |
| 81–1001–791587 | September 15, 1981 |
| 81–1001–791586 | September 24, 1981 |
| 81–1001–816620 | December 22, 1981 |
| 81–1001–881658 | March 4, 1981 |
| 82–1001–881659 | March 4, 1982 |
| 82–1001–882760 | June 10, 1982 |

On or about September 23, 1982, the United States Customs Service ("Customs") commenced an audit of Thorson's importation records. Trial Transcript ("Tr.") at 35. The purpose of the audit was to investigate whether the chemicals imported by Thorson originated from Belgium and therefore were subject to the possible assessment of antidumping duties. Tr. at 34.

Among the workpapers prepared in connection with the audit was a memorandum dated July 15, 1983, from Regulatory Audit Division Director Joseph C. Sparano addressed to the Deputy Assistant Regional Commissioner of the New York Region. Def. Exh. L. In the memorandum Sparano indicated that the auditors had discovered that Thorson was using a double-invoicing system. The memorandum stated that the auditors found that Thorson presented Customs with lower valued invoices than the relating invoices found in Thorson's files. The memorandum further stated that the two invoices for the same merchandise differed by $20.00 per metric ton and that higher value was paid to the exporter, Thorson Chemical GmbH of Germany ("Thorson Germany").[2]

The results of the completed Thorson audit were documented in an audit report dated December 29, 1983. Based on the findings contained in that report, Customs began an investigation which resulted in the issuance of a pre-penalty notice to Thorson on April 25, 1985 and an amended pre-penalty notice on November 14, 1985. The amended pre-penalty notice stated that Thorson's double-invoicing system was due to fraud, resulted in undervaluing of dutiable values and a loss of duties in the amount of $7,356.12; the proposed penalty was $2,582,406.00 (the domestic value of the merchandise). Pl. Exh. 33 at 4.

Thorson responded to the pre-penalty notice on May 17, 1985. Pl. Exh. 33 at 1. In its response, Thorson denied any allegation of fraud or negligence, but admitted using a double-invoicing scheme on certain entries as a way of granting a loan to Thorson Germany, in order "to assist [its] German affiliate to overcome temporary finan-

---

**1.** In the alternative, Plaintiff seeks civil penalties based upon gross negligence or negligence. *See* 19 U.S.C. § 1592 (1988). Because the Court finds fraud in this case, the merits of Plaintiff's alternative claims are not discussed.

**2.** Thorson Germany GmbH is a German entity which served as a purchasing agent in Europe for Thorson U.S. Eighty-five percent of the stock of Thorson Germany is owned by a pension plan, the beneficiaries of which are the employees of Thorson U.S.

cial difficulty so that [it] could continue to enjoy 90 day open account terms as opposed to sight letter of credit." *Id.* Thorson further stated that "overpayments" made to Thorson Germany were returned. *Id.*

Customs issued a penalty notice in the amount of $2,582,406.00 on May 19, 1986. Pl. Exh. 34 at 3. On June 12, 1986, Thorson filed a petition for relief from the penalty and tendered a check for $7,356.12 to the Customs Service. *Id.* In the petition Thorson again explained that the double-invoicing scheme was a method of granting a loan to its German affiliate without a promissory note because the note would have to be shown to the German banks and this would, in turn, threaten the affiliate's line of credit. *Id.* at 1. Thorson restated that the loans were repaid. Lastly, Thorson explained that in actuality there was no lower entered value for the two invoices because Thorson paid the German affiliate 1.5 percent above cost, as it had done for many years. *Id.*

On February 18, 1987, the Customs Service advised Thorson that the amount of the penalty would be remitted to $58,848.96 if payment were made within seven days. Pl. Exh. 35. Thorson tendered no additional monies to Customs and filed a supplemental petition for relief from the penalty.

Customs, calculating the five-year period for instituting the instant action from the date of entry of the subject merchandise, requested a waiver of the statute of limitations from Thorson.[3] In total, Thorson submitted four waivers of the statute of limitations, each waiving the statute for a one-year period. The instant action was filed on November 16, 1988.

Defendant Thorson then moved pursuant to Rule 56 of the Rules of this Court for summary judgment on the grounds that the instant action was barred by the statute of limitations. Because of certain factual contentions concerning the validity of certain waivers of the statute of limitations

and other factual issues raised by the pleadings, the Court denied Defendant's motion. *United States v. Thorson Chem. Corp.*, 14 CIT ——, 742 F.Supp. 1170 (1990).

A four day trial of this action included several witnesses and approximately 800 pages of testimony. At the close of trial, the Court directed that the parties submit post-trial briefs for the purpose of clarifying certain matters raised at trial surrounding the eleven entries in this case.

*Discussion*

1. The Waivers are Valid

▮ The applicable limitations period for a penalty collection action is set forth at 19 U.S.C. § 1621. That section provides in pertinent part:

No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered: *Provided,* That in the case of an alleged violation of section 1592 of this title arising out of gross negligence or negligence, such suit or action shall not be instituted more than five years after the date the alleged violation was committed.

19 U.S.C. § 1621 (1988).

The so-called "discovery rule" of section 1621 applies to fraudulent violations of section 1592. Customs' "knowledge of the falsity of import documents is a means to discovery of a section 592 violation and, therefore, causes the statute of limitations to begin to run." *United States v. R.I.T.A. Organics, Inc.*, 487 F.Supp. 75, 78 (N.D.Ill. 1980).

The statute of limitations is an affirmative defense. *See* USCIT Rule 8(d). The party asserting this defense must first establish a prima facie case that the claim is time barred. If a prima facie case is estab-

---

**3.** The government must bring an action either (1) within five years of the date of the discovery of a fraudulent violation of 19 U.S.C. § 1592 or (2) within five years of the date of a grossly negligent or negligent violation of 19 U.S.C. § 1592. *See* 19 U.S.C. § 1621 (1988); *see also* Discussion.

lished, the burden then shifts to the plaintiff to show that some exception to the statute of limitations existed. *See* 51 Am. Jur.2d *Licenses and Permits* §§ 483–485 (1970). In the instant case, therefore, the burden is on the government to prove that the time for bringing the action was tolled by the waivers in question.

The Customs Service has the authority to accept a waiver of the statute of limitations prescribed under 19 U.S.C. § 1621 "if it appears that further administrative consideration would promote final disposition of the matter." T.D. 76–33, 10 Cust.B. & Dec. 69 (1976). Customs' own rules provide that where the party requesting acceptance of the waiver is a corporation or other business entity, the waiver must "be signed by an officer authorized to act for the corporation or other business entity, and proof or such authorization must be included with the request." *Id.* at 70–71.

Within five years from the date of the earliest of the eleven subject entries, October 22, 1980, Customs requested that Thorson provide a waiver of the statute of limitations.[4] A waiver was executed by Thorson's president, Mr. Ernest Abrahamson, on September 11, 1985, within the applicable statute of limitations period for a fraudulent, negligent, or grossly negligent violation of 19 U.S.C. § 1592. Pl. Exh. 43. Accompanying the waiver was a letter from the corporation's secretary confirming that Mr. Abrahamson was the president of Thorson, he was duly authorized to endorse the waiver, and that his signature was authentic. *Id.* at 2. Customs accepted the waiver, which was for a one-year period. Pl. Exh. 44. This waiver therefore was clearly valid and tolled the statute of limitations period for one year, until October 1986.

Three subsequent waivers were submitted for one-year periods on May 21, 1986 (Pl. Exh. 45), February 19, 1987 (Pl. Exh. 48), and November 17, 1987 (Pl. Exh. 50). The May 21, 1986 waiver was accompanied by a corporate resolution authorizing the waiver. Pl. Exh. 47. The February 19, 1987 waiver was not accompanied by a corporate resolution, but was signed by an officer of the corporation. *See* Pl. Exh. 49. The November 17, 1987 waiver apparently included the corporate seal of Thorson and was accepted by Customs. Pl. Exh. 51. The `Court finds that these subsequent waivers were validly executed and consecutively tolled the government's time for bringing the instant action, which was filed on November 16, 1988, within one year of the date of the last waiver. The Defendant's arguments to the contrary, as discussed below, are without merit.

The Defendant urges that the waivers are invalid on several grounds. First, at least one of the purported waivers did not contain a corporate resolution. Second, Customs did not properly inform Thorson of the differing limitation periods provided in 19 U.S.C. § 1621 for fraud and negligence. Third, the waivers were signed involuntarily because Customs provided Thorson with a sample waiver form (*see* Def. Exh. E.) and Thorson's president did not understand the meaning of the waiver statute. Fourth, the government failed to plead with particularity in the Complaint the date of discovery of the fraud. Lastly, even assuming Plaintiff did allege the date of discovery, the action is still time-barred because the date of discovery was, at very latest, when the government was first aware of the double-invoicing system, on July 15, 1983 (Def. Exh. L.), more than five years prior to the date the instant case was filed.

The statute of limitations issue was raised as an affirmative defense in Defendant's answer to the Plaintiff's Complaint. Although the Complaint did not plead facts relating to discovery of fraud, there is no evidence that Defendant was somehow harmed or otherwise prejudiced in this case

---

**4.** Mr. Norman Smolek, an employee of Customs who was assigned to the Fines, Penalties, and Forfeiture Office testified that it is the agency's policy to calculate the statute of limitations from the date of the violation (as opposed to the

on that account.[5]

While two of the waivers did not strictly conform to Customs' own guidelines, there is no evidence that those waivers were improper or otherwise illegally obtained. Although the February 19, 1987 waiver was unaccompanied by a corporate resolution, the Court observes that the waiver was signed by an officer of the corporation known to Customs, Mr. Dale L. Thornborough, who preceded Mr. Abrahamson as president of Thorson. Mr. Thornborough was the signatory on Thorson's response to Custom's pre-penalty notice of May 17, 1985. *See* Pl. Exh. 33. As to the last waiver dated November 17, 1987, while there was no accompanying corporate resolution, the waiver was executed by the president and sole shareholder of Thorson and apparently affixed with the corporate seal.[6]

In the instant case, all the waivers were accepted by Customs, and there is no question in this case that the persons who signed the waivers were acting without authority to do so, or that Defendant was prejudiced by Custom's action.[7] The Court therefore finds that the waivers were validly executed and the action was timely filed. *See* 19 U.S.C. § 1621.

Defendant's arguments concerning the discovery date of fraud are inapposite. Even if the Court were to accept the Defendant's early date of discovery of the fraudulent violations, it is clear that this "discovery" occurred later than the first date of entry of the merchandise, which is the date from which the government conservatively calculated the time for bringing the instant action (*i.e.*, within five years from when an alleged violation was committed). Consequently, the action was necessarily timely filed for the purposes of a fraudulent violation.

Defendant's claims that the waivers were involuntary because Plaintiff allegedly concealed certain information from them concerning the date of discovery of the merchandise and otherwise misled and coerced Defendant into signing the waivers are without merit. There is insufficient evidence before the Court that Customs acted improperly in obtaining the waivers. Thorson's sole witness, the president of Thorson, testified that he could not remember any representations made by Customs regarding differing statute of limitation periods for fraud and negligence claims. Tr. at 626. In fact, Thorson's witness could remember few, if any, details about the circumstances surrounding the waivers. Fi-

---

date of discovery of fraud) as a conservative measure. Tr. at 391.

5. In *United States v. Gordon,* 7 CIT 350, 352 (1984), the Court found that the government in a § 1592 action involving allegations of fraud should, in its Complaint, plead facts relating to the date of discovery of the fraud. The *Gordon* Court nevertheless permitted the plaintiff to amend its Complaint to include such facts. In the instant action, the government asserted its own compliance with the statute of limitations for the first time in its motion to strike Defendant's affirmative defense, to which Defendant filed a response. Further, the Court permitted the parties to submit pre-trial as well as post-trial briefs addressed to, *inter alia,* the statute of limitations issue. In any event, the date of discovery of fraud in this case is not relevant because the Court finds that proper waivers were executed within five years of the *entry* of the merchandise. *See* Discussion.

6. Thorson is a New York corporation, and the Court observes that pursuant to New York law, "[t]he presence of the corporate seal on a written instrument purporting to be executed by

authority of a domestic or foreign corporation shall be prima facie evidence that the instrument was so executed." N.Y.Bus.Corp. Law § 107 (McKinney 1986).

According to the Defendant, Mr. Abrahamson, the president of Thorson who executed the November 17, 1987 waiver, owned 50 percent of the outstanding shares of the corporation from 1968 to 1985 and 100 percent from 1985 to 1988. Mr. Thornborough owned 50 percent of the outstanding shares from 1968 to 1985.

7. The Court notes that up until the time of this case, Thorson never complained to Customs that the waivers were somehow improperly obtained or executed by persons other than those with authority to do so of behalf of the corporation. Indeed, in dismissing Defendant's motion for summary judgment, the Court posited that Defendant "may wish to assert that [its] president, who was sole shareholder of the corporation, dishonestly signed the waiver and contend that such signing might be *ultra vires*." *Thorson Chem.,* 14 CIT at ——, 742 F.Supp. at 1172. However, Defendant has explicitly disavowed such a defense in this case.

nally, that Customs supplied Thorson with a standardized waiver form is hardly evidence of coercion; the form was intended for Thorson's own benefit, not to induce it to waive its rights.

## 2. Fraudulent Violations of 19 U.S.C. § 1592

■ Section 1592(a)(1) of Title 19, United States Code states that:

(1) *General Rule.*—Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence or negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document, written or oral statement, or act which is material and false, or

(ii) any omission which is material, or

(B) may aid or abet any other person to violate subparagraph (A).

(2) *Exception.*—Clerical errors or mistakes of fact are not violations of paragraph (1) unless they are part of a pattern of negligent conduct.

Thus, section 1592 covers three degrees of culpability, fraud, gross negligence, and negligence. While the statute itself does not define these, the Court is guided by case law and Customs' own regulations. Because the Court finds that Defendant has committed fraudulent violations of 19 U.S.C. § 1592, it does not address the merits of Plaintiff's alternative gross negligence and negligence claims.

To prove a fraudulent violation of the statute, the Plaintiff must satisfy the following elements. It must establish, by clear and convincing evidence, that the Defendant (1) deliberately introduced merchandise into the commerce of the United States by means of material false statements, acts, or omissions (2) with intent to

defraud the revenue or otherwise violate the laws of the United States. 19 U.S.C. §§ 1592(a)(1) and (e)(2); *United States v. Daewoo Int'l (America) Corp.*, 12 CIT 889, 896, 696 F.Supp. 1534, 1541 (1988).[8]

The government contends that it has satisfied the first element of fraud by placing in evidence material false statements which appear on each of the consumption entries in this case; all of the consumption entries were signed by Thorson. *See* Customs Form 7501 in Pl. Exhs. 1–11. According to the government, Thorson falsely declared, in a printed statement located on the reverse side of each of the consumption entries, as follows:

To the best of my knowledge and belief, all statements appearing in this entry and in the invoice or invoices and other documents presented herewith and in accordance with which the entry is made, are true and correct in every respect; *the entry and invoices set forth the true prices, values, quantities, and all information as required by the laws and the regulations made in pursuance thereof;* the invoices and other documents are in the same state as when received; *I have not received and do not know of any other invoice, paper, letter, document, or information showing a different currency price, value, quantity, or description of the said merchandise,* and if at any time hereafter I discover any information showing a different state of facts I will immediately make the same known to the District Director of Customs at the port of entry.

Pl. Exhs. 1–11 (emphasis added); *see also* 19 U.S.C. §§ 1482(b), 1484, 1485 (1988).

The declarations contained in the entry papers summarize Thorson's legal obligation pursuant to the statute to file appropriate documentation permitting Customs to properly assess duties and determine whether any other applicable requirement of law is met. *See* 19 U.S.C. § 1484. The statute specifically requires that invoices

---

**8.** Customs defines a fraudulent violation of section 1592 as one "result[ing] from an act or acts (of commission or omission) deliberately done with intent to defraud the revenue or to other-

wise violate the laws of the United States, as established by clear and convincing evidence." 19 C.F.R. Pt. 171, App. B(B)(3) (1988).

contain a declaration that there are no other invoices differing from the invoice submitted to Customs and that both the information contained in the declaration and invoice are true and correct. 19 U.S.C. §§ 1482(b) and 1485.

Thorson admits that it utilized a double, and in some instances, triple-invoicing scheme. Thorson also admits that those invoices differed from the commercial invoices presented to Customs; in some cases the purchase price recorded for the imported merchandise varied by as much as $20.00 per metric ton. Thus, Thorson clearly made a false statement on the entry papers when it declared that no other invoices existed for the merchandise in issue other than those invoices submitted to Customs. *See United States v. Brown,* 404 F.Supp. 968, 970 (S.D.N.Y.1975), *aff'd mem.,* 538 F.2d 315 (2d Cir.1976).

These false statements were material because they induced Customs to believe that the declarations appearing on the commercial invoices were correct. The false statements clearly had a tendency to influence Custom's decision in assessing duties. *See Daewoo,* 12 CIT at 894, 696 F.Supp. at 1540; *United States v. Rockwell Int'l Corp.,* 10 CIT 38, 42, 628 F.Supp. 206, 210 (1986).[9]

Thorson also falsely declared on each consumption entry that it was the consignee and the actual owner of the merchandise. Moreover, Thorson admitted at trial for the first time that it falsely identified the buyer and the seller of the merchandise.

Defendant's witness Mr. Abrahamson testified that Thorson Germany was not the buyer of the merchandise as declared on the special customs invoices submitted to Customs and never sold the merchandise to Thorson U.S. *See* Customs Form 5515 contained in Pl. Exhs. 1–11. Thorson admitted through its witness that it knew at the time it entered the merchandise that the buyer of the merchandise from the Belgian manufacturer Solvay was not Thorson Germany, and that Thorson U.S. was not merely the consignee of the merchandise. By claiming at trial that the buyer was Thorson U.S. and not Thorson Germany, Defendant conceded the falsity of its previous statements.[10]

These false statements are material because the identity of the entity that sold the merchandise to the U.S. importer is an important relationship which forms the basis of the transaction value of the merchandise. *See* 19 U.S.C. § 1401a(b)(4)(A) (1988). Correct identification of the buyer and seller is necessary for Customs to correctly appraise the merchandise and determine the proper duties.[11]

Consequently, the Court finds that there is clear and convincing evidence that Defendant intentionally made material false statements concerning the existence of undisclosed double and triple invoices and the correct identity of the buyer and seller.

The Plaintiff also asserts that it has proved, by clear and convincing evidence, that prices declared by Thorson for the entered merchandise were false and that Thorson undervalued the merchandise. The government bases its argument on the

9. The Customs regulations define a material statement as one which "has the potential to alter the classification, appraisement, or admissibility of merchandise, or the liability for duty." 19 C.F.R. Pt. 171, App. B(A) (1988).

10. Mr. Abrahamson testified at trial that Solvay had an interest in not being identified as a seller in the United States because they produced many of the same products as Allied Chemical, a domestic company. (Tr. at 595). Another likely concern was the existence of an affirmative antidumping finding by the Department of Commerce covering perchloroethylene imported from certain European countries, including Spain and Belgium. *See* Tr. at 637, 734. Com-

merce's affirmative finding of dumping is published at 44 Fed.Reg. 29,045 (May 1979).

11. Further, without proper identification of the seller Customs cannot determine the correct country of origin. Customs would then not be able to determine, for example, whether the merchandise was imported in violation of any existing restrictions upon merchandise originating from specific countries. Indeed, the original audit in this case was initiated to investigate whether the chemicals imported by Thorson U.S. originated from Belgium and, therefore, were subject to the possible assessment of antidumping duties. Tr. at 34.

lack of evidence that the invoices submitted to Customs in fact recorded the true prices paid for the merchandise.

The Court finds that there is clear and convincing evidence that Thorson declared false purchase prices and falsely undervalued the entered merchandise, by virtue of Thorson's decision not to reveal what it paid Thorson Germany for that merchandise. The payments sent to Thorson Germany from Thorson U.S. which appear on the undisclosed invoices are the only evidence from Thorson's own books of the correct purchase prices. Aside from the less than credible testimony of Defendant's own witness, there is no other evidence that these prices were not the actual prices paid for the merchandise. It is significant that Thorson can produce no documentation of what it considers the true price of the merchandise which it says was submitted to Customs.

For the above reasons, the Court finds there is clear and convincing evidence that Thorson made false statements concerning the purchase price of the merchandise and recorded a false entered value. Because Defendant falsely understated the entered value, Customs appraised the imported merchandise based upon the lower declared values and assessed duties upon subject entries in a lower amount than was actually owed. These statements are clearly material for the purposes of section 1592 because they alter the appraisement and liability for duty. *See Rockwell*, 10 CIT at 42, 628 F.Supp. at 209–10.

Nevertheless, Defendant argues that the differences in purchase price for the merchandise can be explained by an alleged loan scheme discussed earlier in this opinion. The government counters that there is insufficient evidence that any loan arrangement between Thorson U.S. and Thorson Germany ever existed that would allegedly account for the purchase price discrepancies found in the invoices. Based upon a careful examination of Defendant's argument set forth below, the Court finds that the Defendant's loan theory is not credible and runs counter to the weight of evidence in this case.

Defendant's principal evidence in support of its loan theory is the testimony of its witness, Mr. Abrahamson. Mr. Abrahamson admitted on cross-examination that the double and triple-invoices observed by Customs auditor Costen covered the same merchandise as the invoices that was entered by means of the entries in this case. Tr. at 687, 688. Defendant maintains, however, that the higher purchase prices were not the actual prices paid for the merchandise; the recorded prices in the unsubmitted invoices were inflated to include loan disbursements made to Thorson Germany. Therefore, Defendant argues that there were no false statements made to Customs regarding the purchase price and no intent to defraud Customs of any revenue or violate the Customs laws. Further, Defendant insists that the actual purchase price for the merchandise was accurately represented to Customs and therefore there were no lost duties involved in this case.

The Court makes the following observations with regard to Defendant's theory. First, there was no documentary evidence of a loan. Although Mr. Abrahamson testified that he recorded the overpayments by which Thorson allegedly extended the loan to Thorson Germany and maintained a file containing the double and triple invoices, Thorson produced no such file or invoices. Tr. at 699–700, 719.[12] It is remarkable that each and every potential piece of evidence that could allegedly have accounted for the differences between the purchase prices ei-

---

12. Thorson's suggestion that it would not be in its interest to maintain documentation of an alleged loan scheme on its own books makes little sense. Thorson's witness Abrahamson testified that Thorson U.S. was a separate company from Thorson Germany and a loan recorded on Thorson U.S.'s books would not show up on the books of the German affiliate. Tr. at 721. Moreover, there appears to be no reason why Thorson U.S. would have to conceal the alleged "loan" made to Thorson Germany from German auditors who, according to Defendant's own witness, were not likely to come to the United

ther was lost, misplaced, or stolen.[13]

Moreover, Mr. Abrahamson did not remember even the most basic details of an alleged loan arrangement. He stated that the amount of the loans were somewhere between $100,000 to $200,000 (Tr. at 602, 640), but was unaware when the loan scheme started, how or when the loan was repaid and at what interest rate, or the amounts of the repayments (Tr. at 606, 641, 645, 718). Mr. Abrahamson could not even recall who negotiated the loan with Thorson Germany. Tr. at 718.

The sole piece of evidence which Defendant relies upon to support its loan theory is a "debit memo" which allegedly showed that Thorson Germany repaid the loans made by Thorson U.S.[14] Mr. Abrahamson testified on direct examination that Thorson would issue such debit memos to Thorson Germany for alleged overpayments made by Thorson upon the merchandise. Tr. at 772. The document in question is dated December 28, 1982, and appears to cover overpayments of $20.00 per metric ton on three shipments of chemicals. As counsel for the government correctly pointed out at trial, however, there is no evidence that the document was part of Thorson's records. Tr. at 615. For example, at his deposition, Mr. Abrahamson could not recognize the very same debit memo allegedly issued by Thorson. Tr. at 779. Moreover, there is no evidence as to who prepared or signed it, when it was prepared, or whether it was prepared contemporaneously with the alleged debt obligation. This unauthenticated document is not enough to raise a sufficient level of doubt in the Court's mind to rebut the otherwise clear and convincing evidence of fraud in this case.

The government has also satisfied the second element of fraud by proving by clear and convincing evidence that material false statements were made with the intention to defraud the revenue or otherwise violate the Customs laws of the United States. This element of intent is satisfied by Thorson's own admissions that it knowingly used a double and triple-invoicing system to pay Thorson Germany more money for the entered merchandise than the prices which were declared to Customs. Thorson's declarations upon the entry documents that no other invoices existed besides those submitted to Customs were therefore executed by Thorson with full knowledge of their falsity. Consequently, Thorson's own admissions in this regard establish its intent to violate the Customs laws. *See Daewoo*, 12 CIT at 896, 696 F.Supp. at 1541.

This Court also finds Defendant's assertion that there was a loan scheme simply incredible. As discussed earlier, Defendant's witness could not recall the most basic terms of the alleged loan arrangement, such as the overall amount of the loan, the time the loan began and ended, the rate of interest, and so on.

Furthermore, Thorson admits that it falsely identified the buyer and seller of the merchandise in order to protect the identity of who it now asserts was the true seller, Solvay. Consequently, the false statements regarding the identity of the buyer and seller were made with intent to violate the Custom's laws. With respect to the false undervaluations, Thorson's admission that it knowingly failed to submit to Customs the price paid to Thorson Germany in exchange for the imported merchandise also establishes Thorson's intent to violate the Customs laws.

### 3. Lost Duties and Penalties

■ According to Plaintiff's Complaint, Defendant's fraudulent violations of section 1592 resulted in total lost duties in the amount of $6,929.82. Thorson has paid the

---

States to examine the books of Thorson U.S. Tr. at 722.

13. According to Defendant, in 1988 Thorson's corporate files were stolen from its office in New York. *See* Pl. Exh. 40.

14. Defendant attempted to introduce the debt memo into evidence at trial as a separate exhibit. The application, it appears, was redundant because the debit memo was already in evidence as part of Plaintiff's Exhibit 33.

lost revenue. Pl. Exh. 34.[15] Because the Court has sustained Plaintiff's fraud claim, the Court dismisses Defendant's counterclaim for restitution of the monies tendered to Customs for the lost duties.

Section 1592 provides for *de novo* review of penalty claims in this Court. 19 U.S.C. § 1592(e)(1). The maximum penalty for a fraudulent violation of section 1592 is the equivalent of the domestic value of the merchandise. 19 U.S.C. § 1592(c)(1). Customs has calculated the domestic value of the merchandise at $2,402,695.00.[16] However, the government in this case asks the Court to assess a far less severe civil penalty of $150,000.00.

The Court has found that Defendant committed fraud. Defendant intentionally violated the laws of the United States by not disclosing double and triple-invoices that differed from that which it submitted to Customs. Worse, Thorson falsely declared otherwise. The degree of culpability is a relevant factor for the Court in assessing a penalty under section 1592. *See United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 764 (1st Cir.1985). Thorson was an experienced importer which should be held thoroughly accountable for the seriousness of the fraud it perpetrated. Further, Thorson's explanation for the discrepancies in the documentation appear false and contrived.

The submission of true and complete statements to Customs is essential for the agency to carry out is function of appraising merchandise, protecting revenue, and enforcing the laws which restrict and deny entry of certain merchandise. Violation of these laws, therefore, is extremely serious and should be dealt with accordingly. This is particularly true where fraudulent behavior is concerned, for the public trust is intentionally violated. Good faith compliance with the Customs laws and regulations must be adhered to by importers, and the breach of such laws should be suffi-

ciently penalized to deter others from considering such actions.

For the reasons stated above, the Court grants judgment for Plaintiff and assesses a civil penalty in the amount of $150,000.00, plus interest from the date of judgment. Defendant's counterclaim for restitution of tendered lost duties is dismissed.

So ordered.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now in conformity with said decision, it is hereby

ORDERED, ADJUDGED, AND DECREED: that judgment is granted in favor of Plaintiff, and it is further

ORDERED, ADJUDGED, AND DECREED: that Plaintiff may recover against Defendant an assessed civil penalty in the amount of $150,000.00, plus interest from the date of judgment, for fraudulent violations of 19 U.S.C. § 1592, and it is further

ORDERED, ADJUDGED, AND DECREED: that Defendant's counterclaim for restitution of tendered lost duties is dismissed.

---

**15.** Thorson actually remitted $7,356.12, which was the amount of lost duties represented to Thorson in the Notice of Penalty. *See* Pl. Exh. 34 at 3.

**16.** Apparently after further calculations following trial, Plaintiff has modified its original domestic value total represented in the Complaint. The Complaint listed $2,420,198.00 as the domestic value of the eleven entries in this case.